UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: VICKIE LYNN SHEFFIELD       CASE NO. 04-12761
    CHAPTER 7

ROBERT W. BAKER       PLAINTIFF

VERSUS       ADV. PROC. NO. 04-1156

VICKIE LYNN SHEFFIELD       DEFENDANT

OPINION

On consideration before the court is a complaint filed by the plaintiff, Robert W. Baker, against the defendant/debtor, Vickie Lynn Sheffield, referred to herein as the defendant; an answer and affirmative defenses to said complaint having been filed by the said defendant; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(I).

II.

The plaintiff and the defendant were formerly married to each other for a period of time slightly exceeding five years. No children were born to the marriage. They were divorced on September 23, 1998, through a decree entered by the Chancery Court of Pontotoc County, Mississippi. Incorporated into the divorce decree was a property settlement agreement that had

been previously executed by the parties on July 17, 1998. Copies of the divorce decree and the property settlement agreement were received in evidence and marked respectively as plaintiff's Exhibits 1 and 2. Because there were no children and no child support issues, the property settlement agreement primarily dealt with the division of certain assets owned by the parties and the assumption of certain financial obligations that presumably had been incurred during their marriage.

Insofar as this adversary proceeding complaint is concerned, the defendant agreed to assume the following debts, as well as, to indemnify and hold the plaintiff harmless from any liability therefrom, to-wit:

1. The automobile lease indebtedness applicable to a 1998 Toyota Camry, the use of which was given to the defendant.

2. The mortgage indebtedness owed to Bank of Mississippi, secured by a house and lot, which was to be deeded by the plaintiff to the defendant.

3. The indebtedness owed on the Bank of Mississippi Mastercard in the approximate amount of $9,000.00

4. The indebtedness owed on the McRae's credit card in the approximate amount of $700.00.

5. The indebtedness owed to Bassett Furniture in the approximate amount of $2,100.00.

6. One-half of the indebtedness owed to Trustmark Bank which totaled $5,000.00, which effectively meant that the defendant was responsible for $2,500.00.

The plaintiff also received several items of property and assumed the liability for a number of debts, agreeing to hold the defendant harmless.

According to a petition to cite the defendant for contempt, which was filed by the plaintiff in the Chancery Court of Pontotoc County, the primary point of contention in this adversary proceeding is the defendant's failure to pay the obligation owed on the Bank of Mississippi Mastercard in the sum of $9,000.00. The contempt proceeding, which apparently was halted because of the defendant's Chapter 7 bankruptcy filing on May 5, 2004, was never fully litigated, and, thus, the defendant has not been found in contempt for violating the provisions set forth in the property settlement agreement.

In Paragraph XIV of the property settlement agreement, the parties inserted the following language:

> The parties further agree that their respective responsibilities for the payment of joint debts, as specified herein, shall be regarded as being in the nature of alimony, as specified under Section 523(5) [sic] of the Bankruptcy Code and shall be a non-dischargeable debt in any bankruptcy proceeding.

The property settlement agreement and the divorce decree were prepared by the law firm of Yeoman and Johnstone, who represented the plaintiff.

According to the testimony developed at trial, the plaintiff filed a voluntary Chapter 7 bankruptcy case, Case No. 99-00291, in the United States Bankruptcy Court for the Southern District of Mississippi on January 20, 1999, shortly after the divorce proceeding was concluded. He received his discharge on May 20, 1999. While he listed Bank of Mississippi as a creditor with an address of Jackson, Mississippi, the court could not ascertain whether this included the Bank of Mississippi Mastercard account.

3

III.

There are two legal issues in this case. The first is whether the defendant's agreement to assume certain financial obligations and to hold the plaintiff harmless is actually in the nature of alimony and support and, thus, non-dischargeable pursuant to §523(a)(5) of the Bankruptcy Code, particularly since these obligations were labeled as non-dischargeable alimony in the property settlement agreement. Alternatively, the second issue is whether these same obligations are non-dischargeable pursuant to §523(a)(15) of the Bankruptcy Code if they are not actually in the nature of alimony or support.

Obligations that are in the nature of support and alimony are non-dischargeable in any bankruptcy case. Section 523(a)(5) of the Bankruptcy Code, the version of which is applicable to the defendant's bankruptcy case, which was filed prior to the effective date of the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 (BAPCPA), reads as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that-
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

4

Section 523(a)(15) was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994. The version of this section which is applicable to the defendant's case provides as follows:

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless-
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

The Tenth Circuit in In re: Goin, 808 F.2d 1391 (10th Cir. 1987), set forth the following guidelines to assist the Bankruptcy Court in making a determination as to whether a payment is in the nature of alimony and support:

1.   If the agreement fails to provide explicitly for spousal support, the court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support;

2.   When there are minor children and an imbalance of income, the payments are likely to be in the nature of support;

3.   Support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and

4.   An obligation that terminates on the remarriage or death is indicative of an agreement for support.

Goin, 808 F.2d at 1392-93.

5

As noted in the case of In re Reines, 142 F.3d 970 (7th Cir. 1998), whether or not the debt is a maintenance obligation is a matter of federal bankruptcy law, rather than state law. Id. at 972. See also, In re Hass, 129 B.R. 531, 536 (Bankr. M.D. Ill. 1989), and In re Calisoff, 92 B.R. 346, 352 (Bankr. N.D. Ill. 1988).

The bankruptcy court is not inextricably bound to the labels placed on obligations by the parties to a domestic relations proceeding. See, In re Reines, 142 F.3d 970, 972 (7th Cir. 1998), In re Goin, 808 F.2d 1391, 1392 (10th Cir. 1987) and Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984).

When a complaint is filed requesting a determination that certain domestic relations obligations are non-dischargeable, courts generally look to the following "alimony and support test" factors to determine if an obligation is indeed in the nature of alimony or support:

1. Will the obligation terminate on the remarriage of the other spouse?

2. What are the relative earning capacities of the parties?

3. Are the payments being made directly to the other party?

4. Is the payment enforceable by contempt?

5. How do the parties treat the obligation for tax purposes?

6. What are the reasonable and necessary living expenses of the receiving spouse?

7. Is the obligation subject to modification if economic circumstances change?

8. What was the nature of the property awarded to the other spouse, e.g., the wife was awarded an automobile with the husband to make payments thereon - was the automobile necessary for the wife's livelihood? The transportation of a dependent?

6

In In re LaFleur, 11 B.R. 26 (Bankr. D. Mass. 1981), the divorced husband debtor filed a complaint seeking a judicial determination that certain debts set forth in a joint stipulation incorporated in a divorce decree were dischargeable. The bankruptcy court held that: (1) an obligation to repay the wife's mother for money loaned to the wife to protect the marital home from foreclosure was dischargeable; (2) an obligation to pay off a charge account balance also was dischargeable in that it was not in the nature of alimony, maintenance, or support; and (3) the attorney fees awarded the wife in her successful contempt action against the debtor for his failure to comply with the provisions in the stipulation providing for child support payments for their minor child were non-dischargeable. The court offered the following comments:

> The Legislative history makes it clear that what constitutes alimony, maintenance or support will be determined under the bankruptcy laws, not state law. *House Report No. 95-595*, 95th Congress, 1st Session (1977) p. 363; *Senate Report No. 95-989*, 95th Congress, 2d Session (1978) pp. 77-79, U.S. Code Cong. & Admin. News 1978, p. 5787.
> "The bankruptcy court does not accept as determinative statements in the decree that it is just a property settlement, but rather looks at the substance of the decree to see if the obligations were in fact imposed for the support of a spouse." *In re Wilbur Delmar Warner*, 5 B.R. 434, 6 BCD 788 at 791 (D. Utah, 1980). See also: *In re Martha Louise Diers*, 7 B.R. 18, 6 BCD 983 at 984 (S.D. Ohio, 1980).
> According to the provisions of both the old Act and the new Code, property settlement obligations to a former spouse will be dischargeable in bankruptcy, while obligations to provide maintenance and support will not. *In re Wilbur Delmar Warner*, 5 B.R. 434, 6 BCD 788 at 790 (D. Utah, 1980); *In re Birdseye*, 548 F.2d 321 (10 Cir. 1977); see also: *Abrams v. Burg*, 367 Mass. 617, 327 N.E. 2d 745 (1975).

Id. at 28-9.

In In re Jenkins, 94 B.R. 355 (Bankr. E.D. Pa. 1988), the debtor's former spouse brought an adversary proceeding for a determination of the dischargeability of certain marital obligations. In drawing a distinction between obligations that were in the nature of alimony, support, or

7

maintenance, compared to those that were in the nature of property settlements, the court offered the following insight:

> The parties are correct that a distinction exists by which obligations in the nature of support, alimony or maintenance are not dischargeable while property settlement obligations are dischargeable. *E.g., Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir. 1984); *In re Grijalva*, 72 B.R. 334 (S.D.W. Va. 1987). That distinction arose from a trilogy of Supreme Court decisions issued at the turn of the twentieth century. In *Audubon v. Shufeldt*, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901), *Dunbar v. Dunbar*, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084 (1903), and *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904), the Court engrafted into the former Bankruptcy Act of 1898 the concept that support, alimony and maintenance payments were nondischargeable obligations because these obligations are based upon a moral and legal duty to provide for one's spouse and children which, as a matter of policy, Congress would not have intended to discharge....

Id. at 357-58.
. . . . .
> Property divisions were viewed, in contrast, as a process by which the property acquired during marriage would be equitably divided, taking into account the monetary and nonmonetary contributions of the spouses, and distinct from any duty of support. *See In re Coffman*, 52 B.R. 667 (Bankr. D. Md. 1985); *Scheible*, at 4, 24 ("Property division is a separation of ownership rights, legal or equitable....").

Id. at 358.

> I agree with those courts which have noted that the question of intent is relevant but should not be the *sine qua non* for determining dischargeability. *See, e.g. In re Calhoun; In re Miller*, 34 B.R. 289 (Bankr. E.D. Pa. 1983). To make intent dispositive would be to cede to the state court (or the parties) what is, at bottom, a federal question. Moreover,
>> at the time the alimony is awarded and the property divided, very often the parties have no intent to differentiate between an alimony debt and a property settlement debt and will view both merely as financial obligations arising from the separation or divorce. (emphasis added)

*In re Alloway*, 37 B.R. at 427. Intent, though, is relevant in determining the nature of the obligation for it is possible, if not likely, that the parties or the state courts will have achieved what they intended. The bankruptcy inquiry, though, is to determine the function of the debt. To the extent the obligation serves the financial purpose behind alimony (or support or maintenance) it is nondischargeable, whatever it is called. To the extent the debt is to divide property irrespective of financial need, it is dischargeable. In

8

some instances, the debt will serve both functions and thus be partly dischargeable. To decide the function of the obligation, "the bankruptcy court may, therefore, consider extrinsic evidence....", Matter of Benich, 811 F.2d 943, 945 (5th Cir. 1987), in addition to the characterization placed upon the debt by the state court or the parties.

Id. at 360.

See also, In re Morel, 983 F.2d 104 (8th Cir. 1992), and In re Sorah, 163 F.3d 397 (6th Cir. 1998).

In the case before this court, the defendant is a registered nurse who is presently unable to work at her profession. She has remarried, but has a severely handicapped child by this second marriage. Her present circumstances will be discussed in more detail hereinbelow. At the time of their divorce, the debtor earned slightly more than the plaintiff. Her hourly wage was approximately $20.00 per hour, and the plaintiff's was approximately $16.00 per hour. This disparity in income would hardly necessitate an award of alimony or support to be paid by the defendant to the plaintiff, particularly since there were no children born to the marriage, the custody of which was being awarded to the plaintiff.

The only factor that even indicates that this should be categorized as alimony is the provision in the property settlement agreement, drafted by the plaintiff's attorneys, to the effect that the obligations to hold the other party harmless from the debt obligations were in the nature of alimony and non-dischargeable in a subsequent bankruptcy case.

This adversary proceeding is primarily about the defendant's failure to pay the Bank of Mississippi Mastercard debt. Comparing the "alimony and support test" factors, enumerated hereinabove, to the facts of this proceeding, lends assistance to this court:

    1.    The obligation to pay the credit card debt will not terminate on the remarriage of the plaintiff.

9

2. The earning capacities, at the time of the divorce, of both the defendant and the plaintiff were relatively comparable.

3. The payments were to be made directly to the credit card issuer, not to the plaintiff.

4. While the Chancery Court of Pontotoc County, Mississippi, did not have an opportunity to adjudicate the plaintiff's petition for contempt, this court doubts that the defendant would be cited for contempt because she does not have the financial wherewithal to pay this obligation.

5. Since there were no payments made on the credit card obligation by the defendant, the court seriously doubts that either party addressed this factor on their respective income tax returns.

6. Since the plaintiff was called upon to make the payments to the Bank of Mississippi, the court would surmise that his living expenses were affected.

7. The court does not know whether the obligation would be modified by the Chancery Court, but would surmise that if a modification were, in fact, granted, because of the current financial circumstances of the parties, that the defendant would benefit by a reduction in this particular obligation.

8. The nature of the obligation was an agreement by the defendant to indemnify and hold harmless the plaintiff from any liability insofar as the Bank of Mississippi Mastercard indebtedness was concerned. Other than the parties agreement that this was in the nature of alimony, there is no credible evidence that this obligation was intended for the support of the plaintiff.

Having looked at each of these factors, this court, despite the label placed on the obligations by the plaintiff and the defendant, cannot conclude that the obligations to pay the credit card debts were in the nature of alimony or support. As such, for purposes of this proceeding, the defendant's obligations to indemnify and hold the plaintiff harmless from the several debts mentioned in the property settlement agreement are not in the nature of alimony and support, but are merely property settlement obligations.

IV.

The court will now look to the provisions of §523(a)(15) of the Bankruptcy Code to make a determination of whether the property settlement obligations are non-dischargeable. The version of this statute, set forth hereinabove, is applicable to this proceeding since the underlying bankruptcy case was filed prior to the effective date of BAPCPA. Since this is a Chapter 7 bankruptcy case, had it been filed after the effective date of BAPCPA, there would be no distinction between obligations that were in the nature of alimony or support as compared to those that were simply property settlement obligations. The distinction now remains only in Chapter 13 cases filed after the effective date of the new legislation.

Section 523(a)(15) is expressly applicable to non-support, alimony, or maintenance obligations. Prior to 1994, when this section was added to the Bankruptcy Code, property settlement obligations were routinely discharged. The section essentially contains a two-part test, to-wit:

1. If the debtor can establish that he or she cannot pay the obligation from income or property not reasonably necessary to be expended for the maintenance or support of the debtor or dependants of the debtor, the inquiry ends and the debt is discharged.

2. However, if the debtor can afford to pay the obligation, the bankruptcy court is called upon to "balance the interests" of the parties. If the benefit of the bankruptcy discharge to the debtor outweighs the detriment to the non-debtor spouse, the debt will be discharged. Conversely, if the detriment to the non-debtor spouse outweighs the benefit of the debtor's discharge, the property settlement obligation will not be discharged.

The facts in this particular proceeding are compelling. While the defendant is a registered nurse and otherwise could be gainfully employed, she has, as mentioned hereinabove, a severely handicapped minor child. The defendant and her current husband have attempted to employ

11

persons to care for this child, but with near disastrous results. The child is so severely handicapped that he requires constant attention around the clock. As such, the defendant has become the primary "care giver" for this child and, consequently, is unable to seek employment. The court does not know how long this situation will exist, but it obviously is a factor that dominates the defendant's life at the present time. The court is confident that the defendant would gladly exchange the payment of these property settlement obligations for a healthy child.

The plaintiff pointed out appropriately that if the defendant could obtain other persons to take care of her child while she sought employment that Medicaid would cover the expenses of these persons. The defendant, in response, testified that she had attempted to do this in the past, but that these persons were simply not qualified to attend to all of the problems experienced by this child. She described one episode where there was a respiratory failure which was almost fatal.

Considering their present financial circumstances, the defendant and her husband do not have sufficient income to meet their monthly expenses. Consequently, it is the opinion of this court that the defendant is clearly unable to pay the property settlement obligations.

Even if the defendant were able to pay these debts, the benefit of her discharge in bankruptcy clearly outweighs the detriment to the plaintiff. As noted hereinabove, shortly after the divorce proceeding had been concluded, the plaintiff filed a Chapter 7 bankruptcy in the Southern District of Mississippi. His contingent liability on the Bank of Mississippi Mastercard debt, which was certainly not an alimony obligation insofar as he was concerned, existed pre-petition before he filed his bankruptcy case. Why the plaintiff did not attempt to discharge his contingent liability on this debt or any of the other debts which the defendant agreed to pay in

the property settlement agreement is a complete mystery. He listed the Bank of Mississippi as a creditor, but the court cannot tell whether this listing was applicable to the Mastercard debt. When he was called upon to pay this obligation, he simply could have reopened his bankruptcy case, amended his schedules, and obtained a discharge. Unless there are factors which are unknown to this court, this would have been a much simpler and less expensive approach to resolve this problem as opposed to filing a non-dischargeability complaint against the defendant.

Having considered all of the factual circumstances confronting the defendant, the court is of the opinion that her property settlement obligations, incorporated into the divorce decree, should be discharged in her bankruptcy case because these obligations cannot be excepted from discharge by either §523(a)(5) or §523(a)(15) of the Bankruptcy Code.

An order will be entered consistent with this opinion contemporaneously herewith.

This the 27th day of June, 2006.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE